UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOUGLAS PASHUTA,<br><br>                           Plaintiff,<br>v.<br>CITY OF SAN DIEGO et al.,<br>                         Defendants. | Case No.: 3:19-CV-2386-CAB-(BLM)<br><br>**ORDER ON DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>**[Doc. No. 11]** |

Pending before the Court is Defendants' motion to Dismiss Plaintiff's First Amended Complaint. [Doc. No. 11.] For the reasons set forth below, the motion is **GRANTED IN PART AND DENIED IN PART**.

PLAINTIFF'S ALLEGATIONS

On April 2, 2019, Pashuta was in the lobby of the Embassy Hotel on Park Boulevard in San Diego. Experiencing a mental crisis, Pashuta believed himself to be invisible and was bathing in the hotel lobby's drinking fountain. Pashuta was not behaving aggressively or violently in any way. [Doc. No. 9, ¶12.]

After the hotel manager called police to report Pashuta's behavior, Dabbaghian arrived and confronted Pashuta. [Doc. No. 9, ¶13.]

Dabbaghian demanded Pashuta's identification. Mr. Pashuta, sweating profusely, exhibited mental confusion and responded by repeatedly asking, "You can see me? You guys can see me?" while spinning in circles. [Doc. No. 9, ¶14.]

When Dabbaghian told Pashuta to leave the hotel, Pashuta was compliant and began walking towards the exit, telling Dabbaghian, "We can go out that door," pointing toward the exit. Pashuta was unarmed and posed no threat to anyone. [Doc. No. 9, ¶15.]

Instead of allowing Pashuta to leave the hotel, however, Dabbaghian forcefully grabbed and wrenched Pashuta's arm, yanked him off his feet, and then body slammed him onto some nearby furniture. [Doc. No. 9, ¶16.]

In a state of confusion, Pashuta pleaded with the officer to give him time to process and comply with the officer's commands. [Doc. No. 9, ¶17.]

Dabbaghian, however, proceeded to punch Pashuta repeatedly on the left side of his face with his closed right fist as Pashuta attempted to curl into a defensive position with his hands protecting the sides of his head. [Doc. No. 9, ¶18.]

Pashuta screamed and continued to exhibit clear signs of a mental crisis, telling Dabbaghian, "I will turn green, I will turn green!" [Doc. No. 9, ¶19.]

At this point, Tutt arrived on scene and joined in Dabbaghian's assault on Pashuta. As Pashuta attempted to protect himself from the officers' attacks, Dabbaghian positioned himself behind Pashuta and applied a blood chokehold, euphemistically referred to as a "carotid restraint," to get Pashuta to pass out. [Doc. No. 9, ¶20.]

While Pashuta was choking in Dabbaghian's grip, Tutt—in violation of SDPD policy and procedure—deployed her taser in dart mode. The barbs embedded themselves in the right side of Pashuta's lower abdomen, and Tutt deployed a full, five second electrical shock to Pashuta's body. And still the assault continued. [Doc. No. 9, ¶21.]

Dabbaghian applied another blood chokehold on Pashuta from behind, holding it until Pashuta lost consciousness and his body slumped to the floor. Finally, the officers handcuffed Pashuta's limp body. All of this was recorded by the officers' bodyworn cameras and witnessed by hotel staff. [Doc. No. 9, ¶22.]

## PROCEDURAL HISTORY

On December 12, 2019, Plaintiff filed the original complaint against Defendants City of San Diego, Nicholas Dabbaghian and Kalena Tutt. [Doc. No. 1.] On January 21, 2020, Defendants filed a motion to dismiss the complaint. [Doc. No. 8.] On February 11, 2020, Plaintiff filed a First Amended Complaint ("FAC"). [Doc. No. 9.] The FAC alleges five separate causes of action: (1) 42 U.S.C. §1983 (excessive force) against Defendants Dabbaghian and Tutt; (2) 42 U.S.C. §1983 (*Monell*) against Defendant City; (3) Cal. Civil Code §52.1(b) (Bane Act) against Defendants Dabbaghian, Tutt, and City; (4) Battery against Defendants Dabbaghian, Tutt, and City; and (5) Negligence against Defendants Dabbaghian, Tutt, and City. [Doc. No. 9.]

On February 25, 2020 Defendants filed a motion to dismiss the second and third causes of action of the FAC. [Doc. No. 11.] On March 17, 2020 Plaintiff filed an opposition to the motion. [Doc. No. 12.] On March 24, 2020 Defendants filed a reply to the opposition. [Doc. No. 13.]

## LEGAL STANDARD

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." A court may dismiss "based on the lack of cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.1990).

Although a complaint need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief," (Fed.R.Civ.P. 8(a)(2)), in order to survive a motion to dismiss this short and plain statement "must contain sufficient factual matter ... to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint must include something more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or " 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.' " *Id*. (*quoting Twombly*, 550 U.S. at 555). Determining

whether a complaint will survive a motion to dismiss for failure to state a claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679. Ultimately, the inquiry focuses on the interplay between the factual allegations of the complaint and the dispositive issues of law in the action. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

In making this context-specific evaluation, this court must construe the complaint in the light most favorable to the plaintiff and accept as true the factual allegations of the complaint. *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007). This rule does not apply to " 'a legal conclusion couched as a factual allegation,' " *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (*quoted in Twombly*, 550 U.S. at 555), nor to "allegations that contradict matters properly subject to judicial notice" or to material attached to or incorporated by reference into the complaint. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988–89 (9th Cir.2001).

## DISCUSSION

A. *Monell*.

Defendants argue that Plaintiff merely alleges that the use of excessive force was a "result of practice or custom among the City's law-enforcement officers of using excessive force in connection with detentions and arrests. . . " [Doc. No. 11-1 at 6, quoting Doc. No. 9 at ¶46.] Defendants further argue the FAC does not state a claim for municipal liability, because the vague policy alleged in the FAC is merely a conclusory statement. [Doc. No. 11-1 at 6.] With regard to the policy, Plaintiff alleges the following:

> This use of excessive force on Pashuta was consistent with, and a result of, a practice or custom among SDPD officers of using excessive in violation of SDPD's express policies and procedures, and in violation of the Fourth Amendment. Indeed, the frequent violation of policies and procedures regarding use of force, and violations of the Fourth Amendment right to be free from excessive force, in addition to the uniformity with which Dabbaghian and Tutt acted throughout this incident, evidence a deliberate

indifference to the training and supervision needs of the City's law-enforcement officers. [Doc. No. 9, ¶23.]
. . . . .
Specifically, the excessive use of force on Pashuta resulted from the City's failure to train SPDP officers concerning the following customs and practices:

    a. To use or tolerate the use of excessive and unreasonable force, including using blood chokeholds and tasers during detentions, arrests, and at other times in an unreasonable manner;

    b. To fail to use appropriate and generally accepted law-enforcement procedures in handling persons who are disabled and/or obviously experiencing mental crises;

    c. To fail to use appropriate and generally accepted law enforcement procedures in handling injured, disabled persons, and/or mentally ill individuals;

    d. To cover-up violations of constitutional rights by any or all of the following:

        i. By failing to properly investigate and/or evaluate complaints or incidents of excessive and unreasonable force, unlawful seizures, and/or handling of emotionally disturbed persons;

        ii. by ignoring and/or failing to properly and adequately investigate and discipline unconstitutional or unlawful police activity; and

        iii. by allowing, tolerating, and/or encouraging police officers to: fail to file complete and accurate police reports; file false police reports; make false statements; intimidate, bias and/or coach witnesses to give false information and/or to attempt to bolster officers' stories; and/or obstruct or interfere with investigations of unconstitutional or unlawful police conduct, by withholding and/or concealing material information; [Doc. No. 9, ¶28.]

To allow, tolerate, and/or encourage a code of silence among law enforcement officers and police department personnel, whereby an officer or member of the department does not provide adverse information against a fellow officer or member of the department. [Doc. No. 9, ¶29.]

Plaintiff's *Monell* claim is an amalgamation of two theories: 1) an official policy or settled practice of using excessive force in detentions and arrests; and 2)

a failure to train officers in the use of force, especially regarding the handling of mentally or emotionally disturbed people.

Plaintiff has plausibly alleged the City was on actual or constructive notice, at the time of this incident, that its officers were inadequately trained and ill-equipped to deal with numerous numbers of mentally ill individuals, and that this was causing frequent constitutional violations. While Plaintiff does not describe any other similar incidents in detail, he does provide information from news reports and studies describing a potential failure in this area. [Doc. No. 9, ¶¶23-27.] Thus, Plaintiff has provided enough facts about the City's policy that Defendants will be able to defend Plaintiff's *Monell* claim based on a failure to train. *See Johnson v. Shasta County,* 83 F.Supp.3d 918, 932 (E.D. 2015); *Boarman v. County of Sacramento*, No. 2:11-cv-02825-KJM-KJN, 2013 WL 1326196, at *5 (E.D. Cal. Mar. 29, 2013).

On the other hand, Plaintiff has not sufficiently alleged a *Monell* claim regarding a policy or custom of using excessive force in arrests and detentions. The allegations regarding Officer Dabbaghian and three other off-duty officers on November 7, 2018 [Doc. No. 9, ¶¶31-33] do not involve an arrest or detention and, therefore, are insufficient to state such a claim.[1] Therefore, the motion to dismiss the second cause of action is **DENIED** to the extent the *Monell* claim is based on a failure to train; otherwise the motion to dismiss the second cause of action is **GRANTED WITH LEAVE TO AMEND**.

B. Bane Act.

California's Bane Act, California Civil Code § 52.1, provides that a person "whose exercise or enjoyment" of constitutional rights has been interfered with "by threat, intimidation, or coercion" may bring a civil action for damages and injunctive relief. *Id*.

---

[1] Paragraphs 31-33 of the FAC are **STRICKEN** pursuant to Fed.R.Civ.P. 12(f). The Court takes no position as to whether evidence supporting such allegations is relevant to other claims in this case.

The essence of such a claim is that "the defendant, by the specified improper means ... tried to or did prevent the plaintiff from doing something he or she had the right to do under the law or force the plaintiff to do something he or she was not required to do." *Austin B. v. Escondido Union Sch. Dist.*, 149 Cal. App. 4th 860, 883 (2007). The elements of an excessive force claim under § 52.1 are essentially the same as under § 1983, *Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1105 (9th Cir. 2014), though a Bane Act claim additionally requires a showing of "a specific intent to violate the arrestee's right to freedom from unreasonable seizure," *Reese v. Cty. of Sacramento*, 888 F.3d 1030, 1043 (9th Cir. 2018) (citation omitted). "[R]eckless disregard for a person's constitutional rights is evidence of a specific intent to deprive that person of those rights." *Reese,* 888 F.3d at 1043 (*quoting United States v. Reese*, 2 F.3d 870, 885 (9th Cir. 1993)).

Here, Plaintiff has sufficiently pleaded an excessive force claim against Defendants Dabbaghian and Tutt. Furthermore, because California law permits *respondeat superior* liability for Bane Act violations, Plaintiff's claim against the Defendants Dabbaghian and Tutt is sufficient to state a claim against the City. *K.T. v. Pittsburg Unified Sch. Dist.*, 219 F. Supp. 3d 970, 982 (N.D. Cal. 2016) (*citing Gant v. Los Angeles Cnty.*, 772 F.3d 608, 623 (9th Cir. 2014); Cal. Gov't Code § 815.2(a)3); Doc. No. 9, ¶ 10 (alleging Dabbaghian and Tutt were, at all relevant times, employees of the City).

Furthermore, the Ninth Circuit specifically addressed a Bane Act claim based on excessive force in *Reese v. Cty. of Sacramento*, and again clarified that the Bane Act does not "require[ ] coercion independent from the constitutional violation." 888 F.3d at 1045. Plaintiff has sufficiently alleged Defendants used "threats, intimidation or coercion" against Plaintiff in saying that Defendants Dabbaghian and Tutt used excessive force against him during the incident on April 2, 2019. Therefore, Defendants' motion to dismiss the third cause of action is **DENIED**.

## CONCLUSION

For the reasons set forth above, the motion to dismiss the First Amended Complaint is **GRANTED IN PART AND DENIED IN PART** as follows:

1. The motion to dismiss the second cause of action is **DENIED** to the extent the *Monell* claim is based on a failure to train; otherwise the motion to dismiss the second cause of action is **GRANTED WITH LEAVE TO AMEND**;
2. The motion to dismiss the third cause of action is **DENIED**.
3. Plaintiff shall have until **April 30, 2020** to file a Second Amended Complaint. If Plaintiff does not file a Second Amended Complaint by April 30, 2020, then Defendants shall **answer** the FAC, as amended by this Order, by **May 15, 2020**.

**IT IS SO ORDERED.**

Dated: April 1, 2020

_____
Hon. Cathy Ann Bencivengo
United States District Judge